**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol G. Courtney, | No. CV 16-389-TUC-LAB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner for Social Security denying her application for disability insurance benefits. (Doc. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. (Doc. 15)

The ALJ's decision is supported by substantial evidence. His finding that Courtney's mental impairment is non-severe is supported by substantial evidence and free from legal error.

PROCEDURAL HISTORY

On June 16, 2014, Courtney filed for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 83) She alleged disability beginning on February 6, 2014, due to coronary artery disease, triple bypass surgery, three heart stents, anxiety with panic attacks, depression, diverticulitis, thyroid disease, recurring basal skin cancer, tongue surgery, and

bilateral carpal tunnel syndrome. (Tr. 28, 191)  Her claim was denied initially and upon reconsideration. (Tr. 113-116; 119-121)  Courtney requested review and appeared with an advocate at a hearing before Administrative Law Judge (ALJ) Peter J. Baum on December 2, 2015. (Tr. 56)  In his decision, dated December 28, 2015, the ALJ found Courtney was not disabled because she could return to her past work as an insurance customer service representative, insurance customer service supervisor, team supervisor, airline customer service representative, or union representative. (Tr. 28-39)

Courtney submitted additional exhibits, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5)  Courtney subsequently filed this action for review pursuant to 42 U.S.C. § 405(g). (Doc. 1)  She argues the ALJ erred by finding her mental impairments non-severe. (Doc. 21)

Claimant's Work History and Medical History

From August of 1996 to March of 2007, Courtney worked in the airline industry, first in customer service and afterwards as a union representative, team supervisor, and project supervisor. (Tr. 202)  From May of 2007 to February of 2014, she worked in the insurance industry, first as a customer service representative, then as a customer service supervisor, and again as a customer service representative. *Id*.

In 2011, Courtney had triple bypass heart surgery, which "she had difficulty recovering from." (Tr. 388)  Her mother died the previous year, and in November of 2013, her sister died, "whom she states was her primary source of support." *Id*.

These events caused a worsening of her mental health, and in February of 2014, she experienced an "emotional breakdown." (Tr. 60)  On February 6, 2014, she stopped work due to "panic attacks" and "anxiety." (Tr. 61);  (Tr. 608)

In April of 2014, Courtney began psychiatric treatment with Tina LeMarque-Denisen, MA, MSW, LGSW. (Doc. 608)  In May of 2014, Courtney attempted suicide by taking an overdose of lorazepam. (Tr. 388)  She "felt increasingly alone and hopeless, [experiencing] general anhedonia, feeling sad, tearful[;] she stopped going to work feeling like it was just too

- 2 -

much." (Tr. 388) She had not been sleeping well, and she had been "overusing, or possibly abusing some of her Vicodin after her bypass surgery . . . ." (Tr. 388) Courtney was admitted to the Sonora Behavioral Health Hospital and was discharged after six days. (Doc. 388)

Karen Floyd, D.O., offered the following diagnosis on discharge: "Axis I: Major depressive disorder, severe, without psychosis, Cocaine dependence in sustained remission, Opiate abuse; Axis II: Deferred; Axis III: Gastroesophageal reflux disease; Hyperlipidemia; CABG [Coronary artery bypass grafting] x3; Axis IV: Severe; Axis V: GAF (admission) = 25, GAF (discharge) = 50." (Doc. 392)

On June 16, 2014, Courtney filed for disability insurance benefits alleging disability beginning on February 6, 2014. (Tr. 28, 83, 191)

In September of 2014, Raymond Novak, M.D., reviewed the medical record for the disability determination service and offered an opinion of Courtney's mental limitations. He diagnosed her with affective disorder and anxiety-related disorder. (Tr. 89-90) He evaluated her "B" listing criteria, which gauge the severity of her mental impairment. *See* 20 C.F.R. § 404.1520a(c)(3) (2011). He found Courtney has "mild" restrictions of her daily activities; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence or pace; and no evidence of decompensation. (Tr. 89) Novak further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of her mental impairment. (Tr. 89) According to Novak, Courtney experienced a "crescendo" of psychosocial stressors, which resulted in her overdose. (Tr. 89-90) She has had an "uncomplicated [treatment] course since w/o any recurrence of [symptoms] and [is] receptive to ongoing [psychiatric] therapy and [shows] compliance to [psychiatric] med[ication] regimen." (Tr. 90) He concluded Courtney's mental impairment was non-severe because it would not last 12 months. (Tr. 90)

In March of 2015, Eugene Campbell, Ph.D., reevaluated Courtney's claim and affirmed Novak's opinion. (Tr. 103-105) According to Campbell, Courtney appeared "very good overall" in her recent mental health exam. (Tr. 104) She was responding to her psychiatric

1 medication. *Id.* She "[h]ad also traveled out to Mexico and [] thought the trip was 'spectacular.'" *Id.*; (Tr. 515)

2 In September of 2014, J. Wright, M.D, reviewed the medical record for the disability determination service and offered an opinion of Courtney's physical limitations. Wright opined that Courtney could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 91) She could sit, stand, and/or walk for 6 hours in an 8-hour day. (Tr. 91) She should never climb ladders, ropes, or scaffolds. (Tr. 91) She should only occasionally crawl or climb ramps or stairs. (Tr. 91) She should avoid concentrated exposures to extreme heat, extreme cold, humidity, fumes, and hazards. (Tr. 92) Wright's opinion suggests that Courtney can perform light work with some exceptions. *See* 20 C.F.R. § 404.1567(b).

In March of 2015, Christopher Maloney, M.D., reevaluated the medical record and also found that Courtney can perform light work with some exceptions. (Tr. 106-08)

In May of 2015, Tina LeMarque-Denison, M.A., M.S.W., L.C.S.W., completed a physical capacities evaluation of Courtney's ability to perform work related tasks. (Tr. 604) She opined Courtney could sit for one or two hours per day and stand or walk for one hour per day. *Id.* She could not use her hands for fine manipulations, repetitive motion tasks, or simple grasping. *Id.* Courtney could lift 20 pounds occasionally and 5 pounds frequently. *Id.*

LeMarque-Denison also completed a Mental Residual Functional Capacity Assessment. (Tr. 605) She opined that Courtney was markedly limited in her ability to "remember locations and work-like procedures," "understand and remember detailed instructions," "maintain attention and concentration," "complete a normal work day . . . without interruptions from psychologically based symptoms," and "accept instructions and respond appropriately to criticism from supervisors." (Tr. 606)

On November 30, 2015, Courtney's treating physician, Dennis C. Westin, M.D., submitted an opinion that Courtney was "not healthy enough to be employed in any work, part-time or full time." (Doc. 776) According to Westin, Courtney "has continued to struggle with depression, suicide ideation, and to be a suicide risk and have the need for frequent psychiatric

- 4 -

follow up and psychotherapy." *Id*. "Her ability to think logically seems to have been impaired and needs further evaluation." *Id*.

Courtney appeared with a lay representative before the ALJ on December 2, 2015. (Tr. 38) She testified that she was born in June of 1951 and attended college for two years. (Tr. 59)

She stopped work in February of 2014 because she had "an emotional breakdown." (Tr. 60) She has not worked since. (Tr. 61) Courtney testified that she still has panic attacks, sometimes every day. (Tr. 64) She takes nitroglycerin for chest pain. (Tr. 65) Since she stopped working, Courtney has been to the emergency room "six or eight times" for heart or asthma complaints. (Tr. 65) Recently she had carpal tunnel surgery on her left hand. (Tr. 65)

Tina LeMarque-Denison testified that she is a licenced clinical social worker who treats Courtney once a week. She explained that Courtney vacillates between moderate and severe depression. (Tr. 71) She is emotionally fragile and "collapses in fear" when confronted with bills or legal documents. (Tr. 71) She gets lost driving in familiar places. (Tr. 72) She goes to the market and then forgets why she is there. (Tr. 72) LeMarque-Denison testified that she "can't see her holding down the simplest job." (Tr. 74)

Malcolm Brodzinsky testified as a vocational expert. (Tr. 76) He testified that Courtney's past work is generally performed at the sedentary exertion level. (Tr. 78-80) Courtney reported that she performed her work at the medium level, but at the hearing stated that she performed her work at the light level. *Id*.

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "severe medically

determinable physical or mental impairment . . . that meets the durational requirement." 20 C.F.R. § 404.1520(a)(4) (2012). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment "significantly limits" his or her "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the ALJ concludes the impairment is not severe, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Courtney "has not engaged in substantial gainful activity since February 6, 2014, the alleged onset date." (Tr. 30) At step two, he found Courtney "has the following severe impairment: status post triple bypass surgery in August 2009." (Tr. 30)

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

1    At step three, the ALJ found Courtney "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1." (Tr. 33)

   The ALJ then analyzed Courtney's residual functional capacity (RFC). He found "the claimant had the residual functional capacity to perform light work . . . except that [she] can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. [She] can frequently balance, stoop, kneel, and crouch, but can only occasionally crawl. [She] must avoid concentrated exposure to extreme heat and cold, humidity, fumes, odors, dusts, gases, poor ventilation, etc., and hazards such as moving machinery and heights." (Tr. 34)

   At step four, the ALJ found Courtney was "capable of performing past relevant work as an insurance customer service representative, Dictionary of Occupational Titles (DOT) Code 249.262-010, sedentary, but performed at light to medium, skilled, SVP 6; insurance customer service supervisor, DOT Code 241.137-014, sedentary, but performed at light to medium, skilled, SVP 6; project supervisor, DOT Code 189.117-030, sedentary, but performed at light to medium, skilled, SVP 8; team supervisor, DOT Code 238.137-022, light, performed at light to medium, skilled, SVP 6; airline customer service representative, DOT Code 238.367-018, sedentary, but performed at light to medium, semi-skilled, SVP 4; and union representative, DOT Code 187.167-018, sedentary, but performed at heavy, skilled, SVP 8. This as generally performed work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 38)

   Accordingly, the ALJ found that Courtney was not disabled from February 6, 2014, the alleged onset date, through the date of the decision. (Tr. 38)

STANDARD OF REVIEW

   An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "[A] claimant will be

1 found disabled only if the impairment is so severe that, considering age, education, and work
2 experience, that person cannot engage in any other kind of substantial gainful work which exists
3 in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

4 The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The
5 decision to deny benefits "should be upheld unless it contains legal error or is not supported by
6 substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence
7 is defined as "such relevant evidence as a reasonable mind might accept as adequate to support
8 a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

9 "Where evidence is susceptible to more than one rational interpretation, the ALJ's
10 decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider
11 the entire record as a whole and may not affirm simply by isolating a specific quantum of
12 supporting evidence." *Id.*

13 In evaluating evidence to determine whether a claimant is disabled, the opinion of a
14 treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
15 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if she
16 sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
17 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner
18 may reject that opinion only if she provides specific and legitimate reasons supported by
19 substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between
20 a medical opinion as to a physical condition and a medical opinion on the ultimate issue of
21 disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

23 DISCUSSION

24 Courtney argues that the ALJ erred when he found her mental impairments were non-
25 severe. Specifically, she argues the ALJ should have given more credence to the opinions
26 offered by the clinical social worker, LeMarque-Denison, LCSW, and the treating physician,
27 Dennis Westin, M.D. (Doc. 21)

1    "At step two of the five-step sequential inquiry, the Commissioner determines whether
2 the claimant has a medically severe impairment or combination of impairments." *Smolen v.*
3 *Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996). A severe impairment is one that "significantly
4 limit[s] [the claimant's] physical or mental ability to do basic work activities" and "must have
5 lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §
6 404.1521(a); 20 C.F.R. § 404.1509. "Basic work activities" are "the abilities and aptitudes
7 necessary to do most jobs" such as "understanding, carrying out, and remembering simple
8 instructions, use of judgment, responding appropriately to supervision, co-workers and usual
9 work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)
10 (punctuation and capitalization modified) The Commissioner employs a special technique to
11 determine the severity of a mental impairment. 20 C.F.R. § 404.1520a.

12    At step four, the ALJ must consider all of the claimant's impairments together, the severe
13 and the non-severe, and determine the claimant's residual functional capacity. 20 C.F.R. §
14 404.1545(e).

15    In this case, the ALJ found at step two of the disability analysis that Courtney's mental
16 impairment was non-severe adopting the opinion of the two non-examining consulting
17 physicians, Raymond Novak, M.D., and Eugene Campbell, Ph.D. (Tr. 31); (Tr. 89-90); (Tr.
18 103-5) The two physicians acknowledged Courtney's "breakdown," but they believed it was
19 caused by a "crescendo" of stressors, and once she began mental health treatment in earnest, her
20 condition improved to the point where she suffered only mild functional limitations. *Id.* The
21 two physicians concluded her mental impairment would not last 12 months and therefore it was
22 non-severe. *Id.*

23    The ALJ accepted and adopted the recommendation of the consulting physicians because
24 he believed it was consistent with the medical record as a whole. (Tr. 32-33) He noted that
25 between August of 2013 and November of 2014, Courtney presented to the Arizona Urgent
26 Care twenty-seven times, but complained of psychological symptoms on only two occasions.
27 (Tr. 32) On June 5, 2014, she reported depression and anxiety and on November 17, 2014 she
28 reported anxiety. (Tr. 32); (Tr. 486); (Tr. 578) On the other occasions, she either explicitly

1 denied anxiety and depression or "her judgment, mood, insight, affect, mental status, and behavior" were found to be "normal" on examination. (Tr. 32)

3 The ALJ further noted that the medical records from Southern Arizona Family Care Plus, from December 15, 2014 through August 29, 2015, are "replete" with notations that Courtney is doing well. (Tr. 33) In some of those records, Courtney explicitly denies depression or anxiety. *Id.* In others, Courtney's judgment, mood, insight, and behavior were found to be normal on examination. *Id.* In December of 2014, Courtney reported "getting out with friends and with grandchildren." (Tr. 33, 711) In January of 2015, Courtney reported she was seeing a new psychiatric physician, she was getting new medication, and she was "doing much better." (Tr. 33, 709)

11 The ALJ also found that Courtney's daily activities are inconsistent with a finding of disability. (Tr. 38); (Tr. 223-226) Courtney reported that "[s]he is able to bathe, dress, groom, and care for her personal hygiene without assistance." *Id.* "She can prepare simple meals and can feed herself." *Id.* "She takes care of the household cats." *Id.* "She does household chores, including laundry." *Id.* "She is able to drive, and can go out unaccompanied." *Id.* "She shops in stores for necessities." *Id.* "She is able to pay bills, count change, handle a savings account, and use a checkbook/money orders." (Tr. 31); (Tr. 226) "She watches television, reads daily, and puts together puzzles." *Id.*

19 Household activities are not generally performed with the same persistence and pace required in the workplace, but they may be considered by the ALJ in evaluating a claimant's level of impairment. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d, 595, 600 (9th Cir. 1999); *see, e.g., Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (Where the claimant "indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries," the court found that "[a]n ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

1     The opinion of the consulting physicians is supported by the medical record. It therefore constitutes substantial evidence in support of the ALJ's decision denying benefits. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

    Courtney argues that the medical record contains evidence showing that her mental impairment is more profound than the ALJ believes. But while that might be true, it is somewhat beside the point. The ALJ's opinion need not be supported by overwhelming evidence or even a preponderance of the evidence. It is sufficient if it is supported by substantial evidence. And here it is. *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").

    Courtney argues that the ALJ improperly discounted the opinion of her treating physician, Dennis C. Westin, M.D. (Doc. 776) On November 30, 2015, Westin submitted an opinion that Courtney was "not healthy enough to be employed in any work, part-time or full time." *Id*. According to Westin, Courtney "has continued to struggle with depression, suicide ideation, and to be a suicide risk and have the need for frequent psychiatric follow up and psychotherapy." *Id*. "Her ability to think logically seems to have been impaired and needs further evaluation." *Id*.

    Ordinarily, the opinion of a treating physician should be given more weight than the opinion of a non-examining consultant. The ALJ may, however, discount "treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)

    In this case, the ALJ discounted Westin's opinion because "there are no clinical records to support [his] opinion." (Tr. 32) This is a specific and legitimate reason for discounting Westin's opinion and adopting the opinion of the non-examining consultants.

    Courtney concedes that Westin's opinion is not supported by any treatment notes. She argues, however, that the ALJ erred by not supplementing the medical record.

    "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*,

1  242 F.3d 1144, 1150 (9th Cir. 2001) (punctuation modified). "This duty extends to the
2  represented as well as to the unrepresented claimant." *Id.* "The ALJ's duty to develop the
3  record fully is also heightened where the claimant may be mentally ill and thus unable to protect
4  her own interests." *Id.* The duty to supplement the medical record is triggered by "ambiguous
5  evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an
6  expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th
7  Cir. 2005); *see also* 20 C.F.R. § 404.1520b.

In this case, the ALJ did not find that the evidence was ambiguous or that the record was inadequate. Accordingly, the ALJ did not violate his duty to develop the record.

Courtney further argues the ALJ improperly discounted the opinion of the clinical social worker, Tina LeMarque-Denison, who opined that Courtney was *markedly* limited in her ability to "remember locations and work-like procedures," "understand and remember detailed instructions," "maintain attention and concentration," "complete a normal work day . . . without interruptions from psychologically based symptoms," and "accept instructions and respond appropriately to criticism from supervisors." (Tr. 606)

A clinical social worker is not an "acceptable medical course" in the eyes of the SSA. Her opinion is not given the same level deference as that accorded a physician or psychologist's. (Tr. 32); *see* 20 C.F.R. 404.1513 (2013); *see also* SSR 06-03p "The ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (punctuation modified).

Here, the ALJ noted that LeMarque-Denison is not an "acceptable medical source." He further explained that he gave her opinion "reduced weight" because it "is not consistent with the medical evidence of record." (Tr. 32) The ALJ provided germane reasons for discounting LeMarque-Denison's opinion.

The ALJ's decision is supported by substantial evidence. His decision to discount the opinion of the treating physician, Westin, and the clinical social worker, LeMarque-Denison, was not legal error. Accordingly,

IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED. The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 7th day of February, 2017.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge